**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHARLENE EARNEST, ROBERT STOUGH and ROBERT STOUGH, JR.** | ) ) ) |
| **Plaintiffs,** | ) **2:11-cv-738** ) |
| v | ) ) ) |
| **CHRISTOPHER W. KING** *Jefferson Hills Borough Council President in his official and individual capacity*, **MICHAEL GREEN** *Jefferson Hills Borough Mayor in his official and individual capacity* **and THE BOROUGH OF JEFFERSON HILLS,** | ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending now before the Court is DEFENDANTS' MOTION TO DISMISS

PLAINTIFFS' COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6), filed at Doc. No. 10,

with brief in support (Doc. No. 11). Plaintiffs responded in opposition with both a response in

opposition, Doc. No. 14, and a brief in support of their response, Doc. No. 15, to which

Defendants filed a reply, Doc. No. 16. The issues have been thoroughly briefed and are now ripe

for disposition. For the reasons that follow, the motion will be granted.

**I.      Background**

      **A.      Procedural Background**

Plaintiffs Charlene Earnest, Robert Stough, and Robert Stough, Jr., initiated this action

with the filing of their civil action complaint on June 2, 2011. *See* Compl. at Doc. No. 1. The

complaint is brought pursuant to 42 U.S.C. § 1983, and seeks to recover for alleged violations of

Plaintiffs' civil rights under the Fourteenth Amendment to the United States Constitution, and for

state law claims of civil conspiracy, assault, and battery, all of which derive from a series of

1

interactions with Jefferson Hills police officers that occurred during the summer months of both 2009 and 2010.  Compl., *generally*.  Defendants move to dismiss the complaint in its entirety, arguing that Plaintiffs have failed to state a claim for which relief can be granted.

B.     Factual Background

Generally speaking, this action stems from neighborhood disharmony among Plaintiffs and Defendant King, all of whom live in the Borough of Jefferson Hills, Pennsylvania.  Plaintiffs Charlene Earnest and Robert Stough are the parents of Robert Stough, Jr., and all three live together.  Compl. at ¶¶ 3 − 5.  Defendant Christopher King and his mother Carol King live in close proximity to one another, and are neighbors of Plaintiffs.  Compl. at ¶ 9.  During the operative time period, Defendant Christopher King was the President of the Jefferson Hills Borough Council.  Compl. at ¶ 6.  The sequence of events alleged within the complaint that give rise to the claims can be arranged into relatively distinct episodes of interaction with the Jefferson Hills police department.

1.     July 11, 2009:  Plaintiff King assaults Defendant Stough

On July 11, 2009, Plaintiffs allege that Defendant King approached Plaintiff Stough, Jr. ("Plaintiff son") at Plaintiffs' home, and complained about noise that Stough and his friends were making.  Compl. at ¶ 10.  Apprehensive that Defendant King was "out of control", Plaintiff son "left the scene" in order to inform his father.  Compl. at ¶ 11.  After being summoned to the scene by his son, Plaintiff Stough, Sr. ("Plaintiff father") "approached Mr. King and criticized his irresponsible behavior."  Compl. at ¶ 12.  The interaction between Plaintiff father and Defendant King culminated with Defendant King throwing Plaintiff father to the ground in such a manner that Plaintiff father struck his head and was rendered unconscious.[1]  Compl. at ¶ 13.

---

[1]      Plaintiffs do not elaborate in any detail on the extent of Plaintiff father's injuries as a result of being thrown to the ground and rendered unconscious.  However, as the complaint further descirbes, Plaintiff father apparently

Plaintiff father was subsequently treated at the Jefferson Regional Medical Center for his injury. Compl. at ¶ 16.

As the confrontation between Plaintiff father and Defendant King was occurring, Plaintiff son called the Jefferson Hills police department. Compl. at ¶ 17. Three police officers responded to the scene, but did not arrive until some point after the alleged assault by Defendant King. Compl. at ¶ 19. "The responding officers did not make any arrests or issue any citations at the direction of Christopher King. … Specifically, Mr. King indicated that he did not want any formal charges brought because, 'It is an election year and the media would be all over this at the District Justice's office.'" Compl. at ¶ 20. Through the course of this discussion with police, Defendant King's mother, Carol King, was screaming, "I want them charged", although it is not clear from the complaint to who she is referring with her use of the word "them". Compl. at 21. While Plaintiff father desired to see criminal charges against Defendant King pursued, he was "specifically told by the reporting officer(s) that he could not press charges against Mr. King because no officer 'personally witnessed' the attack." Compl. at ¶ 20. Following this incident, Plaintiff father alleges that he "was thereafter questioned on unrelated matters concerning various zoning ordinances and during various times following the attack by Mr. King he and his family received various notices and citations regarding alleged zoning violations in the mail." Compl. at ¶ 22.

2. August 2009: Plaintiff Earnest cited for disorderly conduct

One month following the attack on Plaintiff father by Defendant King, Plaintiff Earnest was charged with open lewdness (in violation of 18 Pa.C.S. §5901), disorderly conduct (18 Pa.C.S. §5503(a)(3)), and harassment (18 Pa.C.S. §2709(a)(1)). The citations followed a report

---

regained consciousness by the time police responded to the incident, as he proceeded to interact with the officers. *See* Compl. at ¶ 20.

by Kendra King, the wife of Defendant King, who "alleged that as she walked toward her home with her young children, Earnest spat in the street, and exposed her bare buttocks." Compl. at ¶ 24. Plaintiffs allege that the claims of Kendra King were untrue, and further allege that, consistent with the standard employed by the police with the earlier incident, Plaintiff Earnest should not have been cited by police given the fact that no police officer personally witnessed the disorderly behavior. Compl. at ¶ 25. Plaintiffs contend that the incident was "a continuation of a pattern of harassment that began after the assault of Robert Stough, Sr. by Defendant King." *Id*. The Jefferson Hills police officer who cited Plaintiff Earnest was not one of the three officers involved with the earlier incident.

### 3. June 2010: Defendant Stough, Jr. cited for traffic violations

Plaintiffs allege that one year following the incident involving Defendant King, Plaintiff son was "targeted … in relation to a motor vehicle incident that was settled amicably without the need for any citations and/or charges." Compl. at ¶ 29. Apparently, on or about June 8, 2010, some kind of traffic incident occurred involving two drivers, one of whom was Plaintiff son. Jefferson Hills police officer Dale Provins, Jr., responded to the scene of the incident, and made an initial determination not to issue any citations, at the request of the other driver (not identified in the complaint). Compl. at ¶¶ 30-31. The following day, Defendant King's mother, Carol King, who was a secretary with the Borough police department, received a copy of the incident report for processing. Compl. at ¶ 32. Upon noticing that no citation had been issued, Carol King "immediately expressed outrage", and exclaimed, "I want something done. If you people don't want to do your job I'll see this place disbanded." Compl. at ¶ 33. Twenty (20) days following the incident, the other driver involved in the incident "allegedly contacted Jefferson Hills Police officer Provins and … stated that he wished to proceed with the matter through the

police department and wanted charges made against Stough Jr." Compl. at ¶ 34. Thereafter,

officer Provins issued three citations to Plaintiff son for the following:

a.  Citation number B7915115-5, for "careless driving" under Pa. MVC, 75 Pa.C.S. § 3714(a). Stough, Jr. allegedly "cut off" the complainant while they were both operating their respective motor vehicles on a roadway in Jefferson Hills, Pa;

b.  Citation number P8520213-2, for "disorderly conduct" under Pa.C.S. § 5503(a)(1). Stough, Jr., according to the citation, "engag[ed] in threatening behavior by attempting to fight with victim[,] block[ing] vehicle in and approach[ing] victim causing concern for safety.";

c.  Citation number P8520214-3, for "Harassment", under 18 Pa,C.S. § 2709(a)(3) Stough, Jr. allegedly engaged in a course of conduct which served no legitimate purpose and followed and approached the victim in a threatening manner.

Compl. at ¶ 35. Despite being the officer who cited Plaintiff son, officer Provins "expressed

disdain with the police department about the issuance of the above citations". Compl. at ¶ 37.

### 4.  August 2010: Acting Chief reports Defendant King to Attorney General

Plaintiffs allege that the former acting chief of police, Chief Reagan, "was taken aback

by what had occurred" and contacted to Pennsylvania Office of the Attorney General ("AG's

office") to report "the clear impropriety conducted by the Kings in using their political influence

to exact retaliation against the Plaintiffs because of their personal differences with the Plaintiffs."

Compl. at ¶ 39. Following his initial contact with the AG's office, Chief Reagan alerted

Defendant Green, the mayor of Jefferson Hills. Compl. at ¶ 41. Defendant Green purportedly

instructed Chief Reagan "not to proceed with his complaint", instruction which Regan complied

with out of a fear "for his job security." Compl. at ¶ 43.

## II.  Standard of Review

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiently of

the complaint filed by Plaintiff. The United States Supreme Court has held that "[a] plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555(207)(citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a *plausible* claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (emphasis added).

Thus, after *Iqbal*, a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009). First, the Court must separate the factual and legal elements of the claim. *Id.* Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id.* at 210–211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* at 211 (citing *Iqbal*, 129 S.Ct. at 1949). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal*, 129 S.Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Id.* at 211. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 210 (quoting *Iqbal*, 129 S.Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and the requirements of Fed.R.Civ.P. 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008)(internal citations omitted). Fed.R.Civ.P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n. 3 (internal citations and quotations omitted). Additionally, the Supreme Court did not abolish the Fed.R.Civ.P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips*, 515 F.3d at 231(citing *Twombly*, 550 U.S. at 553).

## III.    Analysis

As detailed above, this sequence of events giving rise to Plaintiffs' cause of action begins on or about July 11, 2009, with the confrontation between Plaintiff father and Defendant King. The alleged assault by Defendant King, in turn, resulted in a response to the incident by law enforcement, and, according to Plaintiffs, subsequent entanglements with law enforcement in the months that followed. The assault itself is incorporated into the complaint at Counts II (the

section 1983 substantive due process claim) and V and VI (pendent state law claims for assault and for battery).  Plaintiffs' claims derived from their subsequent interactions with law enforcement are incorporated into the complaint at Counts I (the section 1983 equal protection claim), III (the section 1983 procedural due process claim), and IV (the pendent state law conspiracy claim).

The Court will begin with Plaintiffs' section 1983 claims, all three of which invoke different causes of action under the Fourteenth Amendment.  42 U.S.C. § 1983, enacted as part of the Civil Rights Act of 1871, establishes "a federal remedy against a person who, acting under color of state law, deprives another of constitutional rights."  *Burella v. City of Philadelphia*, 501 F.3d 134, 139 (quotations omitted).  In order to establish a prima facie case under § 1983, a plaintiff must demonstrate that:  (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law.  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

A.    Count I:  Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Count I, as pled, essentially falls into the equal protection category of a claim of selective enforcement of the law.  *See, e.g.*, *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir.1993)(explaining that selective, discriminatory enforcement of a facially valid law is unconstitutional under the Equal Protection Clause).   Plaintiffs allege that the disparity in treatment they received at the hands of the police department of the Borough of Jefferson Hills, which was purportedly at the direction of the Defendant King, violated their rights under the Equal Protection Clause.  *See* Compl. at ¶¶ 49 – 51.  It is not entirely clear from the complaint,

however, whether Plaintiffs are alleging that they, as a discreet group, were treated differently from anyone else, or whether Defendant King individually receives special treatment from the police as compared to everyone else.  *Compare* Compl. ¶ 39 (contending that Defendant King had a vendetta against Plaintiffs) with ¶ 47 (contending that Defendants "used their official offices for their own personal benefit in preventing the issuance of various criminal charges against themselves …").

The Supreme Court has stated that the language of the Equal Protection clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997).  To establish a selective-enforcement claim, a plaintiff must show "(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right." *Dique v. N.J. State Police*, 603 F.3d 181, 184 n. 5 (3d Cir.2010)(internal quotation marks, alterations omitted).  As to the first element, persons are similarly situated under the Equal Protection Clause when they are alike "in all relevant aspects." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *see also, Startzell v City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008).  In terms of the second element, proof of disparate impact alone is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate.  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 242, 244–45, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).  Similarly, the Court of Appeals for the Third Circuit has held that a pure or generic retaliation

claim does not implicate the Equal Protection Clause. *Thomas v. Independence Township*, 463 F.3d 285, 298 n.6 (3d Cir. 2006).

The heart of Plaintiffs' claim is the notion that "… if the same standard was applied by the Borough of Jefferson Hills that was explained in the above-referenced assault procured by Defendant Christopher King, Charlene Earnest should never have been cited because there was no first hand police knowledge of this alleged incident." Compl. at ¶ 25. Likewise, Plaintiffs contend that Defendant King was instrumental in pressuring the other driver to the traffic incident on June 8, 2010 involving Plaintiff son to "proceed with the matter through the police department and wanted charges made against Stough." Compl. at ¶ 34.

Plaintiffs' complaint fails to allege similarly situated individuals, similar in all relevant aspects, being treated differently. The events about which Plaintiffs complain involved different sets of actors in completely different sets of circumstances. In terms of the actors themselves, the first event involved Defendant King, Plaintiff father, Plaintiff son, and three Borough police officers. The second involved Defendant King's wife (Kendra King), Plaintiff Earnest, and a different individual Jefferson Hills police officer. As to the second event, Defendant King himself is not alleged to be a party to, nor alleged to have played any part in, the citation of Plaintiff Earnest. The third event involved Plaintiff son, a second driver complaining about Plaintiff son (complainant), Defendant King, and, once again, a different police officer. As to the third event, Defendant King did not direct the Jefferson Hills officer to cite Plaintiff son, but instead implored the other participant in the incident to do so. Further, the first involved an assault and battery following an argument, the second involved disorderly behavior with no physical contact between the perpetrator and alleged victim, and the third involved motor vehicle related offense. In sum, different police officers responded to different incidents for the purpose

of investigating different alleged criminal violations of the law. On one level, these factual differences, particularly the involvement of different police officers responding to reports of different crimes, fail to allege treatment of individuals who are similarly situated in all relevant respects. On an even deeper level, the different participants amplify the dissimilarities in terms of the second element.

The complaint fails to allege any facts to support the existence of some unjustifiable standard, such as race or religion, some other arbitrary factor, or to prevent the exercise of a fundamental right. Apparently, Plaintiffs cast themselves as essentially a "class of three" people; a group to whom a different set of standards is applied. However, the complaint is devoid of any allegations that there was no rational basis, or discriminatory intent, for the disparate treatment taken by Defendants. *See Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3rd Cir. 2008). It is not enough for a plaintiff to allege that a state actor has exercised discretionary authority in an individualized manner, particularly in settings which inherently involve discretionary decisions. In *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008), the Supreme Court explained:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

> Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather,

> challenges the legitimacy of the underlying action itself - the decision to ticket speeders under such circumstances.  Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns.  But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action.  It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective or individualized.

*Engquist*, 553 U.S. at 603 – 04.  While the issue in *Engquist* involved an equal protection claim in the context of a public employment action, this analysis has been applied to equal protection claims in other factual settings as well.  *See*, *e.g., Whittaker v County of Lawrence,* 674 F.Supp.2d 668 (W.D. Pa. 2009); *see also*, *Vinateri v. Mosley*, --- F.Supp.2d ---, 2011 WL 1335196 (N.D. Cal. 2011).  The very language of the example provided in *Engquist* itself, namely the issuance of traffic citations, is actually more analogous to the facts *sub judice* than either the underlying cause of action as pled in *Engquist* (involving a public employment dispute) or *Whittaker* (involving a zoning dispute).

The Court notes that while this issue has not been squarely addressed by the United States Court of Appeals for the Third Circuit, other circuits have addressed this issue post-*Engquist* in factual scenarios similar to this one.  In *Elliot–Park v. Manglona*, for example, the Ninth Circuit found that a victim of a traffic collision pleaded a colorable equal protection violation where she alleged that officers failed to arrest or even investigate the at-fault driver. 592 F.3d 1003 (9th Cir.2010).  There, a man collided with plaintiff's vehicle.  Although the plaintiff claimed the man was obviously intoxicated, the responding officers did not perform a breathalyzer test or arrest him.  Although the officers did call an ambulance for plaintiff and question bystanders, they otherwise did not treat the drunk driver as a criminal suspect.  The plaintiff claimed her efforts to pursue criminal charges were further thwarted by the responding officers.  Importantly, the plaintiff alleged the officers were motivated by their racial affinity to

the drunk driver—that driver and all responding officers were ethnically Micronesian while plaintiff was ethnically Korean. While the Court agreed that "individuals don't have a constitutional right to have police officers arrest others who have victimized them," *id.* at 1006, and that the "officers' discretion in deciding whom to arrest is certainly broad," that discretion, according to the Court, plainly "cannot be exercised in a racially discriminatory fashion." *Id.* In other words, the officers were not permitted to give the drunk driver a "pass" if the reason behind it was racial bias in favor of the driver and against the plaintiff. *Id. See also Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir.2000).

Here, Plaintiffs' equal protection theory is somewhat analogous to that advanced in *Manglona*. They suggest that the officers subordinated their discretion to that of Defendant King by refusing to arrest or cite him. Unlike in *Manglona*, however, Plaintiffs do not advance a race-based claim, they do not allege any kind of membership in a protected class, nor do they allege any other discriminatory basis for the alleged disparity. Instead, they simply assert that they were treated differently by Defendant King and his mother "to exact retaliation against Plaintiffs because of their personal differences with the Plaintiffs". Compl. ¶ 39. However, such a theory overlooks the fact that the alleged treatment involved discretionary determinations by different police officers, each occasion of which was, by its very nature, subjective and individualized. Just as the Supreme Court noted in *Engquist*, "It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective or individualized." 553 U.S. at 604. Furthermore, Plaintiffs' equal protection claim amounts to nothing more than a generic retaliation claim, motivated by some unalleged personal animus, that surfaces in dissimilar and varied settings. Such a basis cannot form the basis of an equal protection claim and, therefore, Count I will be dismissed.

B.    Counts II and III:  Due Process Claims

With their other two section 1983 claims, Plaintiffs invoke the Due Process Clause of the Fourteenth Amendment, which provides that a state shall not "deprive any person of life, liberty, or property, without due process of law."  Amdt. 14, § 1.  The Due Process Clause includes protections for both procedural and substantive due process.  *Rock v. Gonzales*, 545 U.S. 748, 755, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005).   Count II of the complaint alleges a substantive due process claim, Compl. at ¶¶ 55 – 57, while Count III alleges a procedural due process claim, Comp. at ¶¶ 58 - 60.  Plaintiffs claim the benefit of the Due Process Clause on the grounds that the conduct of the Defendants was "so arbitrary that it shocks the conscience", Comp. at ¶ 57, and that they were deprived of the procedural rights "to proceed criminally against the Defendants", Compl. at ¶ 59.

1.    Substantive Due Process

Substantive due process protects against the arbitrary exercise of government power. *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).  However, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (citing *Collins v. Harker Heights*, 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). To establish a substantive due process violation, a plaintiff must show the government official's conduct "shocks the conscience." *Id.* at 846; *see also Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir.1994); *Savokinas v. Borough of Avoca*, Civ. A. No. 3:07–CV–2311, 2010 WL 235132, at *5 (M.D.Pa. Jan.19, 2010).  "This standard's stringency reflects maintenance of the proper proportions of constitutional, as opposed to ordinary tort, violations." *Blain v. Twp. of Radnor*, 167 F. App'x 330 (3d Cir.2006) (citing *Lewis*, 523 U.S. at 847 n. 8).  What qualifies as conscience-shocking conduct depends upon the unique factual

circumstances of each case. *Lewis*, 523 U.S. at 850. However, as the Supreme Court has explained:

> [W]e have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. In *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–1161, 47 L.Ed.2d 405 (1976), for example, we explained that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States," and in *Daniels v. Williams*, 474 U.S., at 332, 106 S.Ct., at 665, we reaffirmed the point that "[o]ur Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."

*Lewis*, 523 U.S., at 848.

Here, it is unclear what government action Plaintiffs are alleging shocks the conscience to the point of being an actionable substantive due process claim. The enumerated paragraphs under Count II of the complaint offer little in terms of providing structure of Plaintiffs' claims. Plaintiffs' summarily contend:

> 55. Plaintiff incorporates by reference the allegations in paragraphs 1 – 54 as if fully restated.
>
> 56. The policy adopted, implemented and enforced by Defendants and against the Plaintiffs violates the Fourteenth Amendment right to substantive due process on its face because it infringes on the fundamental liberty interests of the Plaintiffs and because it is not based on any objectively reasonable governmental interest.
>
> 57. Defendants' conduct described throughout this complaint is so arbitrary that it shocks the conscience and violates Plaintiffs' Fourteenth Amendment substantive due process rights.

Compl. Unfortunately, such conclusory assertions, "devoid of further factual enhancement", are not helpful in identifying the basis for the substantive due process claim.[2] To the extent that Plaintiffs suggest that the assault itself is the basis, they fail to state a claim. Basing a

---

[2] The Court notes that nowhere within the factual rendition of events contained within paragraphs 1 – 47 of the complaint do Plaintiffs actually allege the existence of any policy as referenced in paragraph 56 that has been "adopted, implemented, and enforced by Defendants."

substantive due process claim on the assault and battery as pled would require the Court to conflate a traditional tort claim with constitutional notions of government power simply by virtue of the fact that Defendant King held a position on the Borough Council at the time of the incident. The facts within the complaint describe a dispute among neighbors over noise, one that resulted in a verbal and physical altercation. There is nothing to suggest that the assault itself was some form of an exercise of government power or official action taken by Defendant King. As such, such a claim fails and will be dismissed.

Similarly, to the extent that Plaintiffs are alleging that Defendant King's purported influence over the police department of Jefferson Hills is official action that "shocks the conscience", such would be little more than a restatement of their equal protection claim, and will be dismissed. To allow the same claim to proceed, albeit recast as a substantive due process claim, would effectively eviscerate the limitation that a generic retaliation claim cannot be the basis for an equal protection claim, which the Court is not inclined to do. In total, Plaintiffs have failed to allege a substantive due process claim, and Count II will be dismissed.

    2.    <u>Procedural Due Process</u>

The Court turns to Plaintiffs' claim under the procedural component of the Due Process Clause. In Count III, Plaintiffs allege the following:

58.    Plaintiff incorporates by reference the allegations in paragraphs 1-57 as if fully restated.

59.    Defendants coerced Plaintiffs into waiving rights to procedural due process under the Fourteenth Amendment by engaging in an ongoing and continual course of retaliation and intimidation under color of law and in making various charges and/or citations against Defendants and in coercing Plaintiffs not to proceed criminally against the Defendants.

60.    At no time did Plaintiffs knowingly and voluntarily consent to the waiver of their procedural due process rights.

Compl. at ¶¶ 58 – 60.  From these allegations, it appears that Plaintiffs' reference to their "procedural due process rights" relates to Plaintiff Stough, Sr. being "specifically told [on July 11, 2009] by the reporting officer(s) that he could not press charges against Mr. King because no officer 'personally witnessed' the attack.  Stough, Sr. informed the officers that he wanted to press charges and he was frustrated that he could not."  Compl. at ¶ 20.  Along those same lines, Plaintiffs' "procedural due process" rights may also refer to the decision of Chief Reagan not to pursue a complaint with the AG's office against Defendant King, at the behest of Defendant Green.

To state a Section 1983 claim for deprivation of procedural due process, Plaintiffs must allege that: (1) they were deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property; and (2) the procedures available did not provide due process of law.  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.2000). Procedural due process does not protect every benefit; rather, to have a property interest in a benefit, a person must clearly have more than an abstract need or desire and more than a unilateral expectation of receiving the benefit.  *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005).  "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property.'" *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).  Only then should a court consider whether the state's procedures comport with due process.  *Id*.  In constitutional parlance, the claimant must have a legitimate claim of an "entitlement."  *Id*.  Entitlements, however, are not established by the Constitution; rather, they are created and defined by existing rules or understandings that stem from an independent source, such as state law.  *Id*.; *see also*, *Unger v. National Residents Matching Program*, 928

F.2d 1392, 1397 (3d Cir. 1991).  A claimant must show an entitlement to a property interest created by a state statute or regulation or arising from government policy or a mutually explicit understanding.  *Carter v. City of Philadelphia*, 989 F.2d 117, 120 (3d Cir.1993); *see Baraka v. McGreevey*, 481 F.3d 187, 206 (3d Cir.2007); *Rogers v. Bucks County Domestic Relations Section*, 959 F.2d 1268, 1274 (3d Cir.1992).

Supreme Court precedent recognizes that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.  *Gonzales*, 545 U.S. at 756 (citing *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462-463, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).  Consistent with that, a private citizen does not have a legal right to compel government officials to arrest or prosecute another person.  *Gonzales*, 545 U.S. at 767 n. 13 (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.")).  Here, Plaintiffs' invocation to their "procedural due process rights" seeks relief for government officials' determination not to arrest or prosecute another person, which is not a cognizable entitlement to a property interest.  As such, Plaintiffs' procedural due process claim will be dismissed.

C.    Supplemental Jurisdiction and Leave to Amend

The supplemental jurisdiction statute provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  Plaintiffs' state law claims in Counts IV - VI arise out of the same circumstances and are so related to their federal claims that they form part of the same case or controversy.  *See Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir.1995).  Therefore, the Court has

supplemental jurisdiction over such state law claims based on its original jurisdiction over Plaintiffs' federal civil rights claims in Counts I, II, and III. Subsection (c) of § 1367, however, provides that a district court may, in its discretion, decline to exercise jurisdiction if any of four conditions are met. One of these conditions is if "the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). The Court of Appeals has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)(other citations omitted).

At the same time, the Court is mindful of the instruction that if a complaint is vulnerable to 12(b)(6) dismissal, a plaintiff must be permitted a curative amendment, unless an amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002)(citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000)). Here, Plaintiffs have failed to state a cognizable section 1983 claim for which relief can be granted. However, such a failure is the result of legal deficiencies in the claims, not factual ones in description of what allegedly occurred. The factual background has been adequately described within the complaint as pled; it simply does not provide a litigable federal civil rights basis for relief, as hereinabove explained. As such, the Court finds that an amendment would be futile, and Counts I, II, and III, will be dismissed with prejudice. In view of the fact that the Court will dismiss the three claims over which it has original jurisdiction, it will decline to exercise

supplemental jurisdiction over the state law claims. Plaintiffs are free to pursue their state law claims in the appropriate state court.

An appropriate order follows.


McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLENE EARNEST, ROBERT STOUGH**<br>**and ROBERT STOUGH, JR.**<br><br>**Plaintiffs,**<br><br>**v**<br><br>**CHRISTOPHER W. KING**<br>*Jefferson Hills Borough Council President in his*<br>*official and individual capacity,* **MICHAEL**<br>**GREEN** *Jefferson Hills Borough Mayor in his*<br>*official and individual capacity* **and THE**<br>**BOROUGH OF JEFFERSON HILLS,**<br><br>**Defendants.** | )<br>)<br>)<br>)   **2:11-cv-738**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 24th day of October, 2011, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO

FED.R.CIV.P. 12(b)(6), filed at Doc. No. 10, is **GRANTED** and Counts I, II, and III are

**DISMISSED** with prejudice.

IT IS FURTHER **ORDERED** that the Court declines to exercise supplemental

jurisdiction over the state law claims alleged at Counts IV, V, and VI.

IT IS FINALLY **ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of

Appellate Procedure, if the parties desire to appeal from this Order they must do so within thirty

(30) days by filing a notice of appeal as provided in Rule 3, Fed. R.App. P.

The Clerk of Court shall docket this case closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Judge

cc:    **Fred C. Jug , Jr., Esquire**
Email: fredjug@covad.net
**Mark R. Hamilton**
Email: mhamilton@c-wlaw.com
**Philip J. Sbrolla**
Email: psbrolla@c-wlaw.com